This afternoon is case number 4-17-0851, Henry the Marriage of E. Kate Daniels and Rock E. Daniels II. Appearing for the appellant is Attorney Scott and for the appellee is Attorney Ryan. Good afternoon. Mr. Scott, are you ready to proceed? I am, Your Honor. You may. May it please the Court. Counsel. My name is Gregory Scott. I represent Rock Daniels II, actually, in this appeal. There are two main issues that we brought the appeal on. We actually brought it on three, but we only pursued two. The first one is the allocation of parenting time. And the second is the Court's use of the statute for child support in effect before July 1, 2017, when it issued its opinion and its ruling after that point in time. First of all, with regard to the issue of parenting time, in this case, the Court determined that, you know, and again, this is probably one of the first cases that I've argued after the switch in the statute, but custody used to lump decision-making and parenting time or visitation and custody together. And in this case, the Court said that these people had the ability to cooperate enough on the important issues of making parental decisions for this child for his lifetime. So religion, education, medical, dental, and extracurricular activities, they possess the ability to cooperate and make joint decisions. If there's a temporary one they disagreed upon, then Kate, who I'll refer to as Ms. Daniels, if that's acceptable to the Court, Kate would have a temporary decision until mediation or a Court were to rule on the issue. The second area that the Court looked at was parenting time. And there's some problems to me in a couple of the areas the way that the Court approached it. Throughout the Court's memorandum, as in one time I think the Court even referred to it as the elephant in the room, was the fact that Rock Daniels suffered a brain injury in 2012, five years prior to the time we tried this case. And I think that that brain injury and some subsequent disabilities that he has in communicating came across in such a fashion that the Court did not look at all of the evidence to determine if there's a bridge between some limitations he has and his ability to parent. Specifically, parenting time is referred to as the time that a parent exercises caretaking functions. And I went through in my brief and I itemized all of those caretaking functions. And the evidence is uncontradicted that Rock performs all of those. During the time of separation, there were no complaints that he didn't perform each and every one of those caretaking functions. So when the Court makes its statement about why it is not giving Rock time with his child as requested, I think we have to examine that. And I would ask the Courts to look at pages 10 and 11 of the memorandum of Judge Davis. He says that because of his injury, it presents a real risk of RWD, which is the child, Rock Williams, not completing homework assignments, etc. The next thing that he relies upon is he says the schedule proposed by Rock, the Court has a significant level of concern that if a 50-50 schedule is ordered due to the effects of his injury, Rock may not be able to provide the level of consistent support RWD needs to succeed in school. Those were the concerns expressed as to why he said you can't have what you are, I don't think it's in the best interest of this child to set up this type of schedule. I think that is a very, as I said in my reply brief, a slippery slope. Where do we cut off because a person has a disability because of whatever has happened to them in life? Their right to parent. I think there has to be a bridge. I cited the SOFR case. And in the SOFR case, I'm not sure which of you, Justice, are on that. To what extent does this mean we are not going to be concerned with what's in the best interest of the child? I'm not saying you don't. It seems to me that the argument here is the best interests of the child are in the primary, are what the court needs to look out for. But if we have a parent with a disability, then the best interest of the child might have to suffer in some sense to accommodate that. Is that what you're arguing, Justice? No, not even close, Your Honor. Then why does it matter whether the parent has a disability or not? I agree with you. It depends on if that disability has a bridge to its ability to parent. And that's what the point was that I'm making in my argument. Because in this case, the evidence shows there is no such bridge. He has the ability to parent. There's no adverse effect upon RWD from his parenting during this time period. There's no evidence that he didn't do his homework. There's no evidence that he was unable to perform any of the parenting functions that are set forth in the statute. And the fact that what I'm saying to the court, as I laid out in my briefs, is that everything he did, he taught this child. He did sports with the child. He taught him to cook. He took him to archery. He taught him how to work outside on fences. He taught him how to clean. He taught him manners. He took him to church. He did all the parenting functions. There's no evidence whatsoever as Rock William having any difficulty from his dad's parenting. So the question becomes, why would this issue of his brain injury be so prevalent in the court's determination? The court is speculating. Can I look at the same document that you are, the Memorandum of Opinion, page 10 of 24? Yes, Your Honor. Because mine says that, further, Kate has been the parent the court has found to have been responsible for coordinating and performing the vast majority of the tasks associated with RWD's education and extracurricular activities. And almost parenthetically, it says, and there is the issue of Rock's brain injury. It doesn't put it in terms of this is a major overarching issue, but merely that there is the issue of Rock's brain injury. Rock has difficulty with memory and communication. He's able to help RWD take knowledge. He's able to help RWD with his schoolwork. But his proposed parenting time schedule presents a real risk of RWD not completing homework assignments, homework, comma, assignments, et cetera. This is not to say that Rock has not been there for RWD. He has. The evidence is overwhelming that Kate has undertaken the lion's share of tasks associated with preparing RWD for his day, whether it be school or play. The court finds that Rock's schedule, not his disability, would present RWD with a scenario where at age 7, he would not have the stability he needs to succeed in school. How do you characterize that as the court's focusing on your client's disability? Because of the fact that it is mentioned as being a prevalent thought of the court at the very beginning and throughout his memorandum, especially down on page 11, where we are talking about under paragraph C, Your Honor, in that language, and where he starts, again, the elephant in the room is Rock's TBI. Many of the functions Kate has performed to you because of Rock's limitations. This factor balances heavily in Kate's favor. But at the time that the court was making this decision, he didn't have those limitations that prevented him from taking care of Rock. The situation changed at the start of the dissolution, as it usually does. Kate got a full-time job versus a part-time job. It was obvious in the family setup and the family's allocation, I guess, of actions for the child. Prior to the time that she took a full-time job and she was part-time, she would perform more of those functions. We're not arguing with that. One of the things that the court, I think, lightly looked at was the fact in the testimony that Rock would work with this child, with his homework, on a daily basis prior to the separation. This was witnessed not only by Rock, but by his mother, Sherry, who happens to be a teacher of elementary children. And it was witnessed afterwards that Rock still did these functions. He still performed those functions. So the question is, is this schedule going to be something that would be disruptive to the stability of the child? Now, when you look at the schedule that Rock proposed, he proposed initially that he would have a 50-50 schedule. The court said, first of all, under Illinois law, I don't think that that's possible unless these people can cooperate effectively or work to that effect. So in our motion for reconsideration, we said if the court doesn't believe under Illinois law it's appropriate to do that, then allow him to have his Sunday nights overnight and his Tuesday nights overnight. That's in our motion to reconsider. And when the court addressed that, it came back and it said the evidence is that these parties do not have a good relationship or the ability to consistently communicate in a civil manner. That's just not supported by the evidence. Kate went out and decided that she would register R.W. for baseball. No objection from Rock. Rock decided that he would put the child in hockey. No objection from Kate. Kate had something going on a Sunday night, so she called up and she says, do you want to have him overnight? And he did. They didn't have any fights or arguments. And one of the things that I pointed out in my reply... I thought she characterized their communication as terrible. She characterized it that way. He did not. And one of the things... Last minute, the judge... Pardon me? Isn't the judge entitled to believe her description? I have no objection with that thought. Well, then, if the judge believes her description that the communication is terrible, doesn't that undermine the argument you're now making? No, Your Honor. I don't believe it does. And I'll tell you why. Because, as I stated in my brief, that if the court adopts the position of saying, okay, on Sunday nights this child can stay overnight, and on Tuesday nights he can stay overnight, there's not communication between the parties on that. The child's picked up and dropped off at school. There's no communication. Is he coming Tuesday night or Sunday night or anything like that? So there's no communication. And on the major issues, the court has already said these two people can cooperate on that communication. So one doesn't necessarily jive with the other. I think that the court is speculating when it says there's going to be problems. There is no evidence of problems. And I don't believe that it's appropriate for the court to speculate. Because if there's evidence of problems, and we had – there's a lot of evidence. His parents, his aunt, his sister, his uncle, and, in fact, his former employer. He's a very functioning person. And the question is, does he prevent or does he take any actions that's going to instill instability with this child when he would have them? And I would submit that the evidence is not there for that. I don't want to waste my time because I do want to get to the second question. The second question is whether or not the court erred in applying the child support statute that was in effect before the date of its ruling. Because, as we know, the child support statute changed as of July 1, 2017. In that regard, do you believe that the Cole case was properly decided? I have some – I believe that the Cole case, when it said, if a case – if a statute is substantive versus procedural, I believe that that line of law that the Cole case set forth is correct. The question becomes, is the case completed or not? Is this a retroactive application of a statute? And I believe that this is not a retroactive application of a statute. If the court had applied the statute that became effective July 1. And I'll give you a couple of examples. If you're in a trial, a jury trial, if the last witness is called and the evidence is closed, they still have the presentation of arguments to the jury before that trial is finished. If – I assume if we write briefs in this – before this court and don't complete the arguments, the appeal is not complete. Similarly, in this case, we tried the case. The evidence was closed two days before July 1. That's the facts. But the court directed, I want written arguments. The argument phase of the trial was still pending. The Cole case is much different. It was finished. Arguments closed, presented to the court, and the court took two months to rule on it. That's a different scenario. We're in a situation where we were in the middle of the completion of the trial. To say that the argument phase is not part of the trial, or that if the – it only applies to cases that are tried after July 1, 2017, as is the position of Kate, that's not true. The statute doesn't say that. And I think that is not following the statute and not following the law at the time that the court ruled. The evidence that was presented – let me back up. The parties presented evidence with the child support guidelines being those that preceded the change. The evidence was not presented because of the guidelines. The evidence was presented at a time that the guidelines were different. I'm not saying that certain evidence was presented because of the statutory framework in place at the time. It's just in terms of the timeline here, the evidence was presented prior to the effective date of the new legislation. So why would it be inappropriate to have that be the point in time that we should be concerned about, whether or not proofs have been completed prior to the effective date? What is the importance of the argument portion of the case as it relates to the application of the new guidelines? Because the argument takes into account the guidelines in effect at the time of the ruling. And the law is in effect at that time, and the court is ordered or is under the duty to apply the law when it rules on a case. Now, there's no statement in this statute that says, oh, if it was tried before, then I apply the previous law. And it's just like the example I gave in my reply brief. If you tried the child support aspect of a dissolution, but then you tried the property aspect of the dissolution in July, and then closed your proofs, would that then say to you, we have to apply these guidelines at the time that we heard evidence as to factual evidence on support? I don't think so. The legislation was very clear. It became effective July 1, 2017. It didn't say pending cases are heard under the previous or ruled on under the previous statute. It didn't have any of that type of language. So you would disagree with Cole, then, because Cole, the decision was made following the effective date of the statute, two days following the effective date. Is that right? And you would say that it ought to be that the trial court issues its ruling based on the law, in effect, at the time that the ruling is made. That would be my position as to what I think is more correct. I think the Cole decision went on a statement that it would be retroactive because the whole case was closed. I would have taken the position, and I still think the better position to take, is that whatever statute is in effect at the time of the court making its ruling should be applied. And child support is different than maintenance. As I pointed out, the State of Illinois can only have one child support statute in effect at a time. And what this does is it says for this, whatever window you want to give them, if a judge took it under advisement for six months, would that then be a situation? I know there's a 90-day rule in the statute, but say the judge takes 90 days or takes six months. Is that then going to apply the previous law at that point in time? I don't think that you do that. I think the better law is on this date, this is what we apply. If I was ruling on Cole, I would say that they took the wrong approach. But that's my opinion. My opinion is that what they stated as far as the status of the law, whether it's retroactive or not, they could make an argument that two months later it would be retroactive. I think in this case, you can't make that argument because the case wasn't completed. And even if you did, I think the better approach is to say what's in effect on the day of the ruling is what governs. Thank you. Thank you. Ms. Ryan. Good afternoon. I please the Court and counsel, Mrs. Daniels. There is no presumption in favor of a 50-50. There is no law out there that says you should start from 50-50 being the place you start your consideration and that if you're going to do anything other than a 50-50, one has to have reasons for doing that. The law still is what is in the best interest of a child. And this is not a case where this judge wasn't very thoughtful in its considerations. And it's not a case where the Court said, oh, you can only have restricted time with your child. You can only see your child supervised. This is a case where Judge Davis granted this dad very substantial amounts of time with his child. He receives every other weekend from Thursday until Sunday. He has Thursday in the off week. In the off week, he also has Tuesday evening. So this is not a case where we have restrictions on parenting time that he's not allowed to see his child. Mr. Scott is right that the Court looked at all these different factors. And when you go through the trial court's analysis of all the different factors on parenting, he went through each one in measure. Does it favor Kate, mom? Does it favor Rock, dad? And throughout, it favored mom. And the reasons it favored mom is because mom did throughout the entirety of this child's life, including the last two years, she has taken on the lion's share of caring for that child. And really, and the Court recognized this. One of the reasons he was able to parent so effectively is that she made it easy for him to do that. She did what courts like moms to do, and that is to facilitate relationships. And despite the fact that he would hang up on her weekly, that he would accuse her of yelling at him when she never raised her voice, a variety of things that made it very difficult for her to communicate with him. And quite frankly, the trial court judge, and the reason it's an abusive discretion standard and so forth, is that the trial court judge, Judge Davis, had the ability to sit and watch both Rock and Kate over the course of not just two days. There's also a temporary relief hearing. So over a long period of time, got to watch how they spoke, how they addressed things, the manner in which they responded, and was able to see that. And the testimony that came in about, you know, the bags that Kate would pack, to make sure that the checks were written in an envelope before this child went to dad's, to make sure the vitamins were there and the allergy medications were there. When Rock says, oh, I want him to play hockey. I play hockey. Okay. And she made that happen. That's what she did. And with respect to Rock's disability, the judge got to see the manner in which he communicated and so forth. And I don't think, I think this trial court judge took pains on the disability issue to be very fair in that regard and how it analyzed it. But it also was the one who could see how Rock was able to track or not track. There was testimony of Rock's dad where he indicated that Rock had a period of time from several years before his traumatic brain injury in 2012 to a year after his traumatic brain injury where he had no memory. How does that apply to this child? It applies to this child because we parent based on the child that we know. And literally half of this child's lifetime was lost to him. Now, I think that mom was basically really helped facilitate in terms of him parenting. And I think this is a mom who realized that this child is going to have a better life if dad is involved in it. So I do believe that the court carefully considered what was best for this child. You know, this is a mom who had chosen the school. This is a mom who was very involved with the child's education. Dan didn't know the child's, the teacher's name. You heard Mr. Scott's argument that essentially in part was that the findings of the court were inconsistent with other findings the court had made. That by making reference to his disability, but nonetheless according to him the kid was able to do things which would be expected of the father. Were there inconsistencies? And if so, what do you have to say about that? Oh, I think what you may be referring to as inconsistencies, I would see as Judge Davis trying to be very, very fair. And in his order, I mean, he pointed out the things about, okay, horrible, I think it was terrible or horrible, that their abilities to communicate. Okay, and then he said, I want them to jointly parent. He said, that's how you could argue that that's an inconsistency. I see it more as him saying to my client, I want you to continue to communicate with him. I want you to continue to work with him. And sending that message, he also said throughout the other part of this case that wasn't appealed, the decision-making, in each and every factor but religion, he indicated that my client would be the decision-making. If there is a final decision to be made, she's going to be the decision-maker. So I would suggest that, though he was certainly giving encouraging language, which I think trial courts often do, he was substantively saying, we get to something that can't be worked out, mom, you make that decision. And that was education, that was health care, that was extracurricular activities. So I can see how you would conclude that, okay, there's some inconsistencies there. I don't see it that way. I think him trying to be encouraging. And I think with that whole joint, making joint parenting decisions, that's something that trial courts often do because they want parents both to be involved. Ms. Ryan, may I ask you about the transport guidelines and the effective date? Can you give us your argument as to why the point in time that is relevant for the effective date of the guidelines should be when proofs are closed? Well, 27th and 28th of June, this case was tried. On the 28th of June, the judge said, I think he specifically used the word proofs are closed, and he specifically stated, I think it was something along the line of testimony and evidence complete and orders the written arguments. I suggest to you that, like, what I have to say to you today in argument is nothing but based on the facts and the evidence that came in prior to today, that came in prior to July 1. Excuse me. Was there any discussion on June 28th and 29th when the evidence was presented about the fact, you know, we're going to have a new statute in two days? Absolutely none. And with respect to that, and this came up in questions of Mr. Scott. In terms of how this case was presented, this case was presented from a child support standpoint based on the law that existed at the time of trial. There are a number of things that have to be done now under the new law that are quite different. By way of example, you count up 146 days. And because child support changes, if the, let's call it non-custodial parent, parent with the less amount of parenting time, has less than 146 days or has more, their child support is going to be less. If they have less, their child support is going to be more. So there was no walking into court with the calendars, counting out days and counting out nights. So this 146-day criterion is the new law? Yes. There was a child support component of the hearing regarding Brock and Kate? Absolutely. And the court set child support, and the court set child support based on 20% of Brock's net income. It did the old-fashioned analysis that you probably did on the trial court. But under the new law, there's a lot more impact put on the, let's call it, person with primary parenting. And none of that was done. Did Mr. Scott file a petition for re-hearing? Did he file a motion to reconsider? He did file a motion to reconsider, yes. And raise the new statute motion? I believe that he did. I believe that he did, and I believe that the court denied that. In his motion to reconsider, did he also address the child support matter? I'm going to, I believe, yes. I can check, but I believe that he did. I'm sorry. Did he address, I wasn't clear. Did he address it in a fashion by saying, as he has with regard to the effective date of the statute, by the way, the rules are all different now on child support, and we have to go back and revisit this. No. So that was only done with regard to custody? On the motion to reconsider, it was basically, I want you, on the motion to reconsider on custody, it was I want the 50-50 or the 40% of the time. So that was the motion in that regard. Well, I'll seek a clarification from Mr. Scott. But it seems to me, what I want to know is, in his motion to reconsider, was his position at the trial court, yes, I want the new law to apply with regard to custodial relationship, but didn't even raise it with regard to child support? Yeah. With regard to, there was no petition to reopen evidence. If you're, to reopen evidence to do, it was, you know, you should apply this law in the closing argument. The vast body of law that deals with this issue says, err on the side of prospective application, not retroactive application. And over and over and over again, including the statute on statutes, is you look at, you err on the side of prospective application. You don't err on the side of retroactive application. And, you know, when you're sitting there thinking, okay, well, maybe I like the whole case, maybe I don't like the whole case. Basically it is, and the Supreme Court said it, the Illinois Supreme Court said it, is you err on the side of a retroactive application and not a prospective, you err on the side of a prospective application, not a retroactive application. And there's been case law on that. Before you go on to your next point, I just want to be clear on this. Are you saying that the presentation of proofs would have been different out of necessity if the new law, the new guidelines were to be effective? Absolutely. Let me give you one other example. Under the new law, under the old law, is you take, okay, you take someone's gross income and you have these deductions you can make, which include health insurance. Not only the child's health insurance costs, but the parent's health insurance costs. You can deduct that out. You can deduct out mandatory retirement contributions, which were done in this case. Under the new law, that's all gone. And then there's a specific provision in the new law that says how you allocate out health insurance costs between the parents. So, yes, there are fundamental changes to the law that went into effect on July 1 and that were not part of the trial presentation. In this case, that completely wrapped up before the new law went into effect. And the trial court closed the proofs on the 28th. Absolutely. And requested written argument within a specified period of time. Yes. It was clear that he was asking for written argument after a date when the new statute would have taken effect. Yes. I mean, he asked for written arguments and there was no question but that the written arguments would come in after that date. Didn't he give you a specific amount of time? He did. I'm sure he did. Was there any discussion or any indication, either discussion by counsel or indication by the court, that you should also address in your argument the effect of the new law? Absolutely not. No, there was not. And then in the arguments, of course, I argued based on the old law that was in effect at the time of trial. With respect to the Cole case, there becomes an issue. First of all, you look at the clear language of the statute, which said there's the effective date. But then you can take the analysis a bit farther on how you look at this. In the Cole case, with respect to maintenance, which is under the same domestic act, basically, the Illinois Marriage and Dissolution of Marriage Act, as this child support one, and the court clearly said, hey, this is a substantive issue. The change of the whole maintenance structure and how it's doing is substantive. It's not procedural. And in child support, it definitely is substantive and not procedural. Because if it's a procedural issue, the standards for going retroactive are lighter. Courts are more inclined to do that on procedural issues than they are on substantive issues. With respect to, just going back quickly on this parenting thing, one of the issues that was brought up was a case that Mr. Scott cited regarding it was a disabled parent who actually ended up getting custody of the child. And I just wanted to point out that in that case, that Stouffer case, the mom in that case who had some disabilities, she had been the primary parent. There was no question but that she had been the primary parent. And in this case, there was no question based on the judge's analysis in this case, that Kate had always been the primary parent. So you can talk about disability on that one, but really, I think the reason that she received custody of that child is because she had always been the primary parent  And that is something that Kate has always done. And with respect to Rock doing certain things like homework and so forth, I think the evidence that was presented to the court overwhelmingly showed that it was Kate who headed all of that up. And then really did help facilitate Dad being involved by the way in which she handled things and the way in which she parented and attempted to work with and interact with Dad. I'd be so happy to answer any other questions that you have. If there are any you would like me to address, if there are any issues you want me to hit. I don't see any questions. Thank you. Thank you very much. Scott, the bottle. Thank you. Just a couple points. I believe that, and I don't have my pre-trial memo with me, but I believe in the pre-trial memo, I brought up the issue of child support and its application of the new law. In the motion for reconsideration, I specifically did. And to be clear, just in your argument, your written argument, so proofs have been completed, the trial court requests written argument to be submitted. In your written argument, did you argue the new guidelines? Yes. And then in the request for reconsideration, you argued the new ones? The same thing, that the court didn't apply the proper statute. And I laid out in my written argument that was submitted by July 13th, I think, is when we submitted them, that the new statute and how the court was allocated based upon what it did with the number of overnights. And that's dependent upon that. I disagree with counsel as to if there had been any type of difference in presentation of financial information to the court. Both of these people work in salaried positions. There's not a, you know, like you have if a businessman is out there trying to determine net income or whether someone's going to not have net income easily determined by salaried positions. There was evidence as to the amount of health insurance that was paid. Let me see if I understood correctly your response. You argued the new child support provision both before the hearing and during and after the hearing? We didn't argue during the hearing, but subsequent to the hearing in my argument, the court requested, yes. And you said something in the pretrial as well? In the pretrial memo, I believe that I referenced the fact that we would be having the statute change as of July 1. And I apologize, I don't remember exactly, but I believe it was raised there. But it was raised in my argument. It was the only argument I put forth. The trial court set forth child support in this case? The trial court provided child support in this case? Did the court do so pursuant to the post-July 1 law or the prior law? Prior law. In your argument to the court, did you argue that it should use the prior law or the post-July 1 law in setting child support? I argued that it should use the law in effect after July 1. And the court did not do that? No, it didn't, and that's why I raised it on reconsideration. But I believe that the court was making an error in doing so. In the motion to reconsider? In the motion to reconsider. Okay, I just wanted to make sure I understood. And the trial court addressed your, in his order, he points out, Tate argues that the temporary order entered January 9, 2017, should be adopted as the order this court therein. Brock argues that the provisions of 750-I-6-etc. effective July 1, 17, apply to the issue of child support in the court of reason case. And the court addressed that concern. Yes, I think incorrectly. He's applying pre-amendment provisions. He finds the statutory amendment to be substantive rather than procedural. The case was tried before July 1. The court does not apply the amended statute retroactively. Yes, and Your Honor, or Justice, I believe that is the error that we are pointing out. I know my light is on, but I'll make one comment. It's not red. His dad said, yeah, he had this period where he couldn't remember. But he also said, I've watched him, and he is totally without limitations as far as meeting the needs of RW. In both training, safety, everything. And in fact, Kate said she didn't have any worries about him completing the homework or any of the assignments or anything like that in her testimony. So that's all I wanted to point out. Thank you very much. Thank you, Mr. Scott. Thank you both.